UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL HAILU MAMO,

                                    Petitioner,

        v.

PAMELA BONDI, *et al*.,

                                    Respondents.

Case No. C25-2562-SKV

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS

## I.    INTRODUCTION

Petitioner Michael Hailu Mamo is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  Petitioner, through counsel, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he asserts that his prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution.  Dkt. 1. Respondents, in a return petition, argue that Petitioner's continued detention without a court-ordered bond hearing does not violate his due process rights.  Dkt. 6.  Having considered the petition, the return, Petitioner's traverse (Dkt. 9), and the governing law, the Court herein GRANTS the petition and ORDERS Respondents to provide Petitioner with a bond hearing within fourteen days of the date of this Order.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 1

## II.    BACKGROUND

Petitioner is a native and citizen of Ethiopia who arrived in the United States on June 8, 2025, seeking admission as a B1/B2 visitor.  Declaration of Javier Delgado (Delgado Decl.), Dkt. 8, ¶¶ 3, 4; Declaration of Kayla C. Stahman (Stahman Decl.), Dkt. 7, Ex. D at 3-5.  Upon arrival, Petitioner presented himself to a United States Customs and Border Patrol ("CBP") officer at Seattle-Tacoma International Airport and stated he was there to visit his brother, who lived in Washington, for a period of two months.  Stahman Decl., Ex. D at 4.  Because of concerns regarding Petitioner's admissibility, he was referred to Passport Control Secondary for further admissibility review.  *Id.*

Secondary checks revealed that Petitioner had previously entered the United States with his wife and failed to disclose that the purpose of the trip was for his wife to give birth.  *See* Delgado Decl., ¶ 4; Stahman Decl., Ex. D at 3-5.  A search of Petitioner's baggage revealed documents typically used to adjust status, leading CBP officers to suspect Petitioner intended to stay in the United States permanently.  *Id.*  Petitioner claimed asylum on the grounds that he was being targeted by an extremist group in Ethiopia.  *Id.*  CBP determined that Petitioner was inadmissible under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I).  *Id.*  Petitioner was detained under 8 U.S.C. § 1225, placed in Expedited Removal with Credible Fear Proceedings, and transported to NWIPC.  Delgado Decl., ¶ 5.

On July 21, 2025, United States Citizenship and Immigration Services ("USCIS") conducted a credible fear interview.  *See* Delgado Decl., ¶ 6; Stahman Decl., Ex. A.  On July 23, 2025, the Department of Homeland Security ("DHS") issued a Notice to Appeal ("NTA") charging Petitioner as removable under INA § 212(a)(7)(A)(i)(I), as amended, "as an immigrant

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 2

who, at the time of application for admission, is not in possession of a valid unexpired immigrant

visa, reentry permit, border crossing card, or other valid entry document required by the Act, and

a valid unexpired passport, or other suitable travel document, or document of identity and

nationality as required under the regulations issued by the Attorney General under section 211(a)

of the Act." Delgado Decl., ¶ 7; Stahman Decl., Ex. B at 1. There is a statement on the NTA

indicating that it was issued after an asylum officer found Petitioner had "demonstrated a

credible fear of persecution or torture." *See* Stahman Decl., Ex. B at 1. Petitioner was

personally served with the NTA on July 24, 2025, and the NTA was filed with the Executive

Office of Immigration Review ("EOIR") the same day. *See* Delgado Decl., ¶ 8; Stahman Decl.,

Ex. B at 2.

On August 4, 2025, Petitioner filed with EOIR an Application for Asylum and

Withholding of Removal, USCIS form I-589. Delgado Decl., ¶ 9. The following day, August 5,

2025, Petitioner appeared before an immigration judge ("IJ"), who sustained the charge in the

NTA and designated Ethiopia as the country of removal. *Id.*, ¶ 10. An individual hearing was

then scheduled for Petitioner on September 16, 2025. *Id.*; Stahman Decl., Ex. E. That hearing

was cancelled and subsequently rescheduled for October 6, 2025. Delgado Decl., ¶¶ 11, 12;

Stahman Decl., Ex. F.

On October 6, 2025, at Petitioner's individual hearing, the IJ granted him asylum and his

applications for withholding of removal and deferral of removal were withdrawn without

prejudice. *See* Delgado Decl., ¶ 13; Stahman Decl., Ex. G. Petitioner waived appeal while DHS

reserved appeal. *Id.* On November 5, 2025, DHS filed an appeal with the Board of Immigration

Appeals ("BIA") challenging the IJ's determination that Petitioner was entitled to asylum. Dkt.

1-3; Delgado Decl., ¶ 14. DHS argued on appeal that the IJ erred in evaluating Petitioner's

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 3

1  credibility.  *See* Dkt. 1-3 at 8-10.  No briefing schedule for the appeal has yet been issued by the

2  BIA.  Delgado Decl., ¶ 15.

### III.   DISCUSSION

### A.   Statutory Framework and Legal Standards

5  Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1).[1]  *See* Dkt. 6 at 1.  Noncitizens

6  are considered "applicants for admission" to the United States when they "arrive" in the United

7  States or are "present" in this country but have "not been admitted."  8 U.S.C. § 1225(a)(1).

8  "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and

9  those covered by § 1225(b)(2)."  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Section

10  1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud,

11  misrepresentation, or lack of valid documentation."  *Id*. (citing § 1225(b)(1)(A)(i)).  Section

12  1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for

13  admission not covered by § 1225(b)(1)[.]"  *Id*.

14  "Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal

15  process that does not include a hearing before an IJ or review of the removal order."  *Banda v.*

16  *McAleenan*, 385 F. Supp. 3d 1099, 1111-12 (W.D. Wash. 2019) (citing 8 U.S.C.

17  § 1225(b)(1)(A)(i).  However, where a noncitizen "indicates either an intention to apply for

18  asylum . . . or a fear of persecution," they must be referred for an interview with an asylum

19  officer.  *Id*. (quoting 8 U.S.C. § 1225(b)(1)(A)(ii); citing 8 C.F.R. § 208.30(d)).  If the officer

20  finds a credible fear of persecution, the noncitizen "shall be detained for further consideration of

21  the application for asylum."  *Id*. (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).

22

23  [1] Petitioner's counsel represented to the Court in the petition that Petitioner is being detained under 8 U.S.C. § 1226.  *See* Dkt. 1 at 5.  However, counsel acknowledges in the traverse that the government has correctly argued Petitioner is detained under 8 U.S.C. § 1225(b) (Dkt. 9 at 1).

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 4

1    Both § 1225(b)(1) and § 1225(b)(2) mandate detention of noncitizens for the entirety of

2    the applicable proceedings. *Jennings*, 583 U.S. at 302. And the "statute does not impose 'any

3    limit on the length of detention' pending a decision on the asylum application and does not

4    authorize bond hearings or release on bond." *Banda*, 385 F. Supp. 3d at 1112 (quoting *Jennings*,

5    583 U.S. at 296). However, both the Supreme Court and Ninth Circuit have "grappled . . . with

6    whether the various immigration detention statutes may authorize indefinite or prolonged

7    detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v.*

8    *Robbins*, 804 F.3d 1060, 1067 (9th Cir. 2015) (quoted source omitted) (discussing, *inter alia*,

9    *Zadvydas v. Davis*, 533 U.S. 678 (2001), *Demore v. Kim*, 538 U.S. 510 (2003), and *Tijani v.*

10   *Willis*, 430 F.3d 1241 (9th Cir. 2005))*, rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281

11   (2018). *See also Toktosunov v. Wamsley*, C25-1724-TL, 2025 WL 3492858, at *2-4 (W.D.

12   Wash. Dec. 5, 2025) (discussing case law).

13    In *Jennings*, the Supreme Court held that § 1225(b) "unambiguously authorizes detention

14   pending resolution of removal proceedings and does not plausibly suggest a 6-month limitation

15   or periodic bond hearings." *Banda*, 385 F. Supp. 3d at 1115 (citing *Jennings*, 583 U.S. at 297,

16   303). While *Jennings* declined to address whether the Constitution places limits on prolonged

17   detention under the INA, *see* 583 U.S. at 312, the Ninth Circuit post-*Jennings* expressed "grave

18   doubts that any statute that allows for arbitrary prolonged detention without any process is

19   constitutional or that those who founded our democracy precisely to protect against the

20   government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909

21   F.3d 252, 256 (9th Cir. 2018). Moreover, "[n]early all district courts that have considered the

22   issue agree that prolonged mandatory detention pending removal proceedings, without a bond

23

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 5

1    hearing, will – at some point – violate the right to due process." *Maliwat v. Scott*, C25-788, 2025

2    WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting *Banda*, 385 F. Supp. 3d at 1116).

3          Neither the Supreme Court, nor the Ninth Circuit has settled on a test for assessing the

4    constitutionality of prolonged mandatory detention. *See Banda*, 385 F. Supp. 3d at 1106. This

5    Court applies the "*Banda*" test in determining whether a noncitizen's detention under § 1225(b)

6    violates due process. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *3; *Hong v. Mayorkas*, C20-

7    1784-LK, 2022 WL 1078627, at *4-5 (W.D. Wash. Apr. 11, 2022). In *Banda*, the Court found

8    "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due

9    process." *Banda*, 385 F. Supp. 3d at 1106, 1117. The Court declined to adopt a rule that

10   detention became unreasonably prolonged at six months, explaining that, pursuant to *Zadvydas*,

11   "at six months, the burden is on the detainee – not the government – to establish a basis for

12   release[,]" and found such a rule would be "inconsistent with the fact-dependent nature of the

13   constitutional question before the Court, namely whether petitioner's prolonged detention has

14   become unreasonable." *Id*. at 1117 (citing *Zadvydas*, 533 U.S. at 701). The Court, instead,

15   adopted a multi-factor test to apply in making the determination of whether § 1225(b) detention

16   has become unreasonable, considering: "(1) the total length of detention to date; (2) the likely

17   duration of future detention; (3) the conditions of detention; (4) delays in the removal

18   proceedings caused by the detainee; (5) delays in the removal proceedings caused by the

19   government; and (6) the likelihood that the removal proceedings will result in a final order of

20   removal." *Id*. at 1106 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn.

21   2019)).

22

23

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 6

**B.      Application of the *Banda* Test**

Respondents acknowledge this Court's utilization of the *Banda* test, *see* Dkt. 6, and the

Court herein applies that test in determining whether Petitioner's continued detention without a

bond hearing is justified.  The Court thereafter considers the relief requested by Petitioner.

*1.      Length of Detention*

The first factor, the length of detention to date, is the most important one.  *Banda*, 385 F.

Supp. 3d at 1118.  "The longer mandatory detention continues . . . the harder it is to justify."

*Murillo-Chavez v. Garland*, C22-0303-LK-MLP, 2022 WL 16555994, at *5 (W.D. Wash. Aug.

30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31,

2022) (citing cases).

As of the date of this Order, Petitioner has been detained by ICE for over seven months.

*See* Stahman Decl., Ex. D at 3-5; Delgado Decl., ¶ 4.  This period of detention has not yet

reached the length of what this Court typically finds unreasonable.  *See, e.g.*, *Maliwat*, 2025 WL

2256711, at *4 (citing cases finding periods of detention ranging from eleven to thirty months to

favor the detainee; finding same for a petitioner detained for nearly twelve months).  *See also*

*Toktosunov*, 2025 WL 3492858, at *4 (finding sixteen months of detention favored detainee);

*Banda*, 385 F. Supp. at 1118-19 (finding approximate seventeen-month detention strongly

favored detainee).  It has, however, exceeded six months and is approaching a period of

detention the Court would find hard to justify.  The Court therefore finds the first *Banda* factor

neutral or weighing slightly in Petitioner's favor.  *See Odimara v. Bostock*, C24-0572-JHC-GJL,

2024 WL 3862256, at *6 (W.D. Wash. July 12, 2024) (considering detention pursuant to 8

U.S.C. § 1226(c) and finding: "Petitioner was detained for four months at the time he filed his

Petition, and his detention has now extended to approximately six months.  Because Petitioner's

1   current detention has reached—but not yet exceeded—the brief period of detention upheld in

2   *Demore*, this first factor is neutral or, at most, weighs slightly in favor of granting a bond

3   hearing."), *report and recommendation adopted*, 2024 WL 3859703 (W.D. Wash. Aug. 19,

4   2024).

5           2.       *Likely Duration of Future Detention*

6           Under the second *Banda* factor, the Court considers how long the petitioner's detention is

7   likely to continue absent judicial intervention, *i.e.,* "the anticipated duration of all removal

8   proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 119

9   (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019)). Respondents note

10  that Petitioner's detention will end once his asylum litigation is completed, and they argue that

11  any conclusions regarding the length of his future detention are speculative.  Petitioner, in

12  response, notes that the BIA has yet to issue a briefing schedule for the appeal by DHS even

13  though the appeal was filed two months ago.  Petitioner asserts that once a briefing schedule is

14  issued, briefing will likely take about two months, and that once briefing is complete, it will

15  likely take about six months, or perhaps longer, for the BIA to process the appeal.[2]  Dkt. 9 at 3.

16  Petitioner further notes that, depending on the outcome of the appeal to the BIA, a party might

17  file a petition for review in the Ninth Circuit, which could take months or years to decide.  *Id.*

18  While Petitioner concedes that it is unknown how long his detention is likely to continue, he

19  maintains "it is likely to be at least several months awaiting the BIA process."  *Id.*  Petitioner

20  argues that this factor therefore weighs strongly in his favor.  *Id.*

21

22

23          [2] In Petitioner's traverse, counsel explains that the government does not publish processing times
    for the BIA and acknowledges the six-month estimate is based on recent observations for detained BIA
    appeals.  Dkt. 9 at 3 n.1.

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 8

1    Given that DHS has chosen to appeal the IJ decision, and given that the appeals process

2  is likely to take a number of additional months, if not more, this factor weighs in Petitioner's

3  favor.

4         3.      *Conditions of Detention*

5    Under the third *Banda* Factor, the Court considers the conditions of Petitioner's detention

6  at the facility where he is currently detained.  "The more that the conditions under which the

7  [noncitizen] is being held resemble penal confinement, the stronger his argument that he is

8  entitled to a bond hearing."  *Banda*, 385 F. Supp. at 1119 (quoted source omitted).

9    While Respondents acknowledge the third factor in their return, they note only that

10  Petitioner is detained at NWIPC without offering any additional argument regarding the

11  conditions there.  *See* Dkt. 6 at 7.  Petitioner relies on ICE's National Detainee Handbook to

12  argue that this third factor favors him.  The National Detainee Handbook, *available at*

13  https://www.ice.gov/doclib/detention/ndHandbook/ndhEnglish.pdf, demonstrates that ICE

14  facilities generally share many characteristics with penal facilities, including segregated housing,

15  body and property searches, and restrictions on food, clothing, grooming, and recreation.

16  However, that publication says nothing about the specific conditions at NWIPC, which would be

17  helpful to the Court in assessing the third *Banda* factor.

18    Petitioner argues in his traverse that "[e]vidence in support of this factor need not be

19  restricted to the petitioner's firsthand account."  Dkt. 9 at 3 (citing *Calderon v.Bostock*, 2025 WL

20  879718, at *4 (W.D. Wash. March 21, 2025)).  While the Court in *Calderon* did, in fact,

21  conclude that evidence pertaining to the "conditions of detention" factor need not be restricted

22  solely to firsthand accounts by the petitioner, it also made clear that the Court was to consider

23

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 9

"the conditions of the detention facility where the petitioner is detained." *Calderon*, 2025 WL

879718, at * 4.  Petitioner presents no evidence whatsoever about the conditions at NWIPC.

Nonetheless, this Court has found in prior actions that conditions at NWIPC are "similar .

. . to those in many prisons and jails." *Maliwat v. Scott*, 2025 WL 2256711, at *6 (W.D. Wash.

Aug. 7, 2025) (citing *Doe v. Bostock*, 2024 WL 3291033, at *11 (W.D. Wash. March 29, 2024);

*Rahman v. Garland*, 2025 WL 1920341, at *4 (W.D. Wash. June 26, 2025)); *see also*

*Toktosunov v. Wamsley*, 2025 WL 3492858, at *5.  Respondents do not argue that a different

conclusion is warranted here.  The third factor therefore weighs in Petitioner's favor.

4.      *Delays in the Removal Proceedings Caused by Petitioner*

Under the fourth factor *Banda* factor, the Court considers delays in the removal

proceedings caused by the Petitioner.  *Banda*, 385 F. Supp. 3d at 1119.  Petitioner asserts that

this factor is neutral as he has not caused any delays in the case.  Dkt. 9 at 4.  Respondents

concede that Petitioner has not caused any delays in his proceedings.  As such, this factor is

neutral.  *See, e.g., Toktosunov*, 2025 WL 3492858, at *5.

5.      *Delays in the Removal Proceedings Caused by Respondents*

Under the fifth factor, the Court "considers the nature and extent of any delays in the

removal proceedings caused by the government."  *Banda*, 385 F. Supp. at 1120.  Petitioner

concedes the government has not caused delays and asserts that this factor is therefore neutral.

Dkt. 9 at 4.  Respondents suggest that this factor favors them as there is no evidence the

government has delayed Petitioner's proceedings.  Dkt. 6 at 7.  Notably, however, Respondents

do not concede that the fourth factor discussed above favors Petitioner even though they

acknowledge Petitioner has not caused any delays in the proceedings either.  There is no basis

for treating the absence of government-caused delay differently than the absence of petitioner-

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 10

1  caused delay.  *See Toktosunov*, 2025 WL 3492858, at *5.  Accordingly, just as the fourth factor

2  discussed above is neutral, so too is the fifth factor.

3         6.         *Likelihood Removal Proceedings Will Result in Final Order of Removal*

4         Finally, under the sixth *Banda* factor, the Court considers "the likelihood that the final

5  proceedings will culminate in a final order of removal."  *Banda*, 385 F. Supp. 3d at 1120 (quoted

6  source omitted).  The Court, in other words, considers whether the petitioner has asserted any

7  defenses to removal.  *Id*.  "Where a noncitizen has not asserted any grounds for relief from

8  removal, presumably the noncitizen will be removed from the United States, and continued

9  detention will at least marginally serve the purpose of detention, namely assuring the noncitizen

10  is removed as ordered."  *Id*. (cited source omitted).  "But where a noncitizen has asserted a good

11  faith challenge to removal, 'the categorical nature of the detention will become increasingly

12  unreasonable.'"  *Id*. (quoted source omitted).

13        Respondents asserts only that because litigation regarding Petiitoner's asylum claim is

14  ongoing, this factor is speculative.  Dkt. 6 at 7.  Petitioner disagrees, arguing that this factor

15  favors him even though litigation remains ongoing.  *See* Dkt. 9 at 4-5.  Petitioner notes that he

16  was awarded asylum by the IJ and that the government has challenged only credibility in its

17  pending appeal, which is subject to a deferential "clearly erroneous" standard of review.  *Id*.

18  Petitioner argues that "the government faces substantial obstacles on appeal, and the likelihood

19  of the appeal ultimately resulting in a final order of removal is low."  *Id*. at 5.  In *Totosunov*, a

20  case in which the facts are similar to those presented here, the court concluded that the sixth

21  factor weighed in favor of granting a bond hearing, explaining that "[a]lthough the appeal adds

22  some uncertainty, the fact remains that Petitioner has prevailed before an immigration judge on a

23  prior occasion[.]" 2025 WL 3492858, at * 5. This Court similarly concludes that because

1   Petitioner did, in fact, prevail on his asylum claim before the IJ, the sixth factor weighs in his

2   favor.

3          7.      *Weighing the Factors*

4          In sum, three factors (duration of future detention, conditions of detention, and likelihood

5   removal proceedings will result in final order of removal) clearly weigh in Petitioner's favor, two

6   factors (delays caused by Petitioner, and delays caused by Respondents) are neutral, and one –

7   the most important – factor (length of detention) is neutral or weighs slightly in Petitioner's

8   favor.  No factors weigh in Respondents' favor.  The Court therefore concludes that the *Banda*

9   test, on balance, favors Petitioner, that his continued detention under § 1225(b) has become

10  unreasonable, and that due process requires that he be provided a bond hearing.  *See, e.g.*,

11  *Maliwat*, 2025 WL 2256711, at *8-9 (finding same where two factors, including length of

12  detention, clearly favored petitioner, the two factors considering delay were either neutral or

13  slightly favored petitioner, and the final two factors were neutral; noting that cases finding a

14  petitioner not entitled to a bond hearing "often find that several factors weigh in favor of the

15  government or that more factors are neutral and favor the government than favor the

16  petitioner."); *Banda*, 385 F. Supp. 3d at 1120 (finding same where four factors weighed in

17  petitioner's favor and two were neutral).

18      **C.      Relief**

19          Having found Petitioner's continued detention unreasonable, the Court turns to the relief

20  requested.  Petitioner requests that the Court issue a writ of habeas corpus ordering that

21  Respondents provide him an individualized hearing before an IJ, within ten days, at which the

22  government bears the burden of establishing dangerousness or flight risk.  Dkt. 1 at 6.  Petitioner

23  appears to further request that, if the government fails to meet their burden, this Court should

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 12

1  order that Petitioner be immediately released without bond, an ankle monitor, or other

2  conditions. *Id.* Finally, Petitioner requests that the Court issue an order providing for an award

3  of attorney's fees and costs. *Id.*

4      The Court, consistent with the practice of this District, will order that a bond hearing be

5  held before an IJ within fourteen days of this Order. *See, e.g.*, *Toktosunov*, 2025 WL 3492858, at

6  *6; *Maliwat*, 2025 WL 2256711, at *10. Also, and as this Court has previously recognized,

7  Respondents are properly held to a clear and convincing standard of proof at that hearing, *see*

8  *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), and, if they fail to meet that burden,

9  Petitioner's financial circumstances and alternative release conditions must be considered. *See,*

10  *e.g., Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10. This Court will

11  not, as Petitioner appears to request, insert itself into the bond determination process by ordering

12  that the immigration court refrain from imposing specific conditions should it determine that the

13  government failed to meet its burden of establishing dangerousness or risk of flight. Finally, the

14  Court observes that Petitioner's request for attorney fees must be set forth in a fee petition

15  pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

16                    **IV.    CONCLUSION**

17      (1)    Based on the foregoing, this Court hereby FINDS and ORDERS as follows:

18      (2)    Petitioner's petition for writ of habeas corpus (Dkt. 1) is GRANTED.

19      (3)    Within **fourteen (14) days** of the date of this Order, Respondents shall provide

20  Petitioner an individualized bond hearing that complies with the requirements of *Singh v.*

21  *Holder*, 638 F.3d 1196 (9th Cir. 2011).

22  //

23  //

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 13

1        (4)      Any fee petition shall be filed within the deadlines set by the Equal Access to

2    Justice Act, 28 U.S.C. § 2412.

3        DATED this 20th day of January, 2026.

4

5                                             S. KATE VAUGHAN
                                              United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS - 14